**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re: | : | Chapter 7 |
| | : | |
| JIE (GEORGE) XIAO, | : | Case No. 13-51186-JJT |
| | : | |
| Debtor. | : | |
| | : | |
| | : | Adv. Pro. No. 14-05019-JJT |
| RONALD I. CHORCHES, TRUSTEE | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| XIN CHEN, | : | Re: ECF No. 1 Count One |
| Defendant. | : | |
| | : | |

**DEFENDANT XIN CHEN'S OBJECTION AND RESPONSE**
**TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Defendant, Xin Chen, by and through her attorneys, Condon & Associates, PLLC, objects and responds to the Plaintiff's Motion for Injunctive Relief pursuant to 11 U.S.C. §105 and Fed. R. Bankr. P. 7064 and 7065 as follows:

The Plaintiff, Ronald I. Chorches, as Trustee of the bankruptcy estate of Jie (George) Xiao ("Xiao") seeks injunctive relief whereby Chen would be ordered to deposit assets with the Clerk of the Court that are located outside of this Court's jurisdiction. For the reasons set forth herein, the motion should be denied in its entirety.

At the outset, what the Plaintiff asks the Court to determine on this motion for injunctive relief is essentially the ultimate issue in this case – the intent of the Defendant. Here, Plaintiff asks the Court to find that the actions of Chen evidence an intent to hinder, delay and avoid a judgment in this case. At the very least, a determination on this issue should be held in abeyance until the parties have had the opportunity to present their case at trial. The trial is currently scheduled for April 18, 2017.

1

The Trustee's instant motion should be denied for several reasons. First, Chen transferred the money at issue because Xiao's former bankruptcy attorney, Carlos Cuevas ("Cuevas"), had frozen Chen's bank account in February, 2014 pursuant to an improperly issued Default Judgment in Bronx County, New York which was filed on January 10, 2014. Secondly, I believe that the parties to this action (and their attorneys) knew about Cuevas' efforts as against Chen because, upon information and belief, Dow's attorney, Eric Goldstein, had numerous conversations with Cuevas, questionably in violation of Xiao's Attorney Client Privilege, about Cuevas' allegations and efforts to collect as against both Xiao and Chen. I am advised that Cuevas had actually appeared and consulted with attorney Eric Goldstein on several occasions both inside and outside of Bankruptcy Court. No doubt that Cuevas advised all parties that he had frozen Chen's bank accounts in February, 2014 and that the same was lifted at the end of March, 2014.

In fact, Chen had to file an Order to Show Cause dated March 3, 2014 in Bronx County Supreme Court to vacate the January, 2014 Default Judgment issued by the Bronx County Supreme Court. After the matter was fully briefed and Cuevas testified, by Order dated March 26, 2014, Judge Barone vacated the Default Judgment which released Chen's restrained bank account with Novartis, her employer at the time.

Cuevas' alleges in his complaint against (non-client) Chen for unpaid legal fees that are allegedly owed by his client, Chen's ex-husband Xiao, because they perpetrated a "sham divorce". Cuevas' service of the complaint against Chen in New Jersey was suspect. Chen never answered and Cuevas took a Default Judgment against Chen and Xiao in Bronx County, New York on January 10, 2014.

The circumstances under which Cuevas obtained the January, 2014 Default Judgment were suspect at best and fraudulent at worst. Cuevas, whose father happened to be the former Deputy Borough President for the Bronx, felt that he had jurisdiction to bring the Court proceeding against

2

Chen in the Bronx – despite her being a New Jersey resident and he having his offices in Westchester – because he had "rented" a conference room in the Bronx for one weekend at a cost of $100. At the hearing held before Hon. John Barone in Bronx County on March 17, 2014, Cuevas was asked about this conference room that he purportedly "rented" in the Bronx. Cuevas testified that he used the conference room for one weekend which so happened to be the weekend he drafted his papers against Chen. Incidentally, the papers drafted against Chen was the only legal work Cuevas did during that one weekend in the Bronx (See Tr. Pg. 7, L. 15 – Pg. 14, L. 1; a copy of the full Court Transcript dated March 17, 2014 is annexed herewith as Exhibit **"A"**).

Incidentally, the Judgment against Chen that was issued by Judge Barone in January, 2014, had Chen's address in New Jersey and Cuevas' address in Westchester (A copy of the January 10, 2014 Default Judgement is annexed herewith as Exhibit **"B"**). During our private in chambers conference with Judge Barone, he accused me of implying that there was a political fix in his issuing the Default. Thereafter, I respectfully asked that Court that we stop having private conversation in Chambers and that we go out to the Court to put everything on the record. I requested to voir dire Cuevas which the Court permitted. Thereafter, Cuevas testified that he drafted the Chen papers during the weekend that he "rented" a conference room in the Bronx for $100 and that he did no other legal action for any other client (See Exhibit **"A"**).

After Cuevas' testimony, Judge Barone held that Cuevas made a "mistake" and brought the case improperly in Bronx. Judge Barone indicated that he was going to vacate the default. However, Judge Barone did not release the restraint on Chen's bank account until he heard argument on venue. That matter was to be heard on March 24, 2014.

At the hearing on March 24, 2014, Judge Barone issued an order vacating the default, lifting the restraint on Chen's bank account with her credit union and transferred the case to Westchester County. (A copy of the March 24, 2014 Transcript is annexed herewith as Exhibit **"C"**)

On March 26, 2014, we received a written Order from Judge Barone setting forth his oral decision from the bench on March 24th. A copy of the March 26, 2014 Order is annexed herewith as Exhibit **"D".**

On March 26, 2014, I contacted Novartis' counsel about releasing Chen's Novartis credit union bank account. That same day, Novartis agreed to release the restraint on the account and, as is confirmed in the email exchange between my office and Chen, she took the money out of the unfrozen credit union account on March 26, 2014. (A copy of the email exchange of March 26, 2014 is annexed herewith as Exhibit **"E"**).

Despite the release of the account, Cuevas did not give up. He filed a Notice of Entry and Notice of Appeal of the Court's March, 2014 Order (A copy of the Notice of Entry is annexed herewith as Exhibit **"F"**). The case was transferred to Westchester and the case has been litigated in that forum.

In April, 2014, I advised Chen that Cuevas was going to continue his efforts to hold her responsible for the debt that her ex-husband allegedly owed Cuevas. Cuevas's attorney was upset that the Novartis account was unrestrained and complained to Novartis' counsel that their actions were improper. Novartis' counsel called me in April, 2014 and asked if I could get the transcript "So Ordered" by Judge Barone. I wrote a letter to Judge Barone on April 14, 2014 requesting that the Court "So Order" the transcript. (A copy of that April 14, 2014 letter is annexed herewith as Exhibit **"G"**).

Cuevas was doing everything in his power to restrain Chen's money. As Cuevas showed himself capable of questionable actions, I told Chen that she needed to protect her money from him. I understand that Chen started transferring money to her sick mother in China. While I did not know where she was sending the money, I was happy that she was transferring the money from Cuevas' grasp.

4

Notwithstanding the foregoing, given the fact that the money transferred to China prior to May 15, 2014, before the service of any Court Order in this action, is no longer in the possession, custody or control of Chen, any order directing her to deposit $1,350,000.00 with the Clerk of the Court would be directing her to deposit money that she does not have and essentially, would be forcing her to deposit her wages. In the past year, Chen has been unemployed for approximately seven (7) months and has only recently found employment. She is the sole caregiver and financial supporter of her two children. Such a result is not warranted, given the facts involving Cuevas and that there is no evidence of an immediate threat of injury to the Plaintiff.

Chen will testify at the hearing on this matter on March 20, 2017 regarding the Trustee's allegations against her, including certain wire transfers that she made in 2014, alleged false statements in certain Affidavits that she submitted, as well as the deposition testimony that she gave in this matter.

## FACTUAL BACKGROUND

1. The Plaintiff's motion should be denied because, although Plaintiff paints Chen as someone who has taken actions to evade any judgment in this Court, and obtained by the Plaintiff, this is simply not the truth.

2. The Trustee filed this action on or about April 8, 2014 along with an Application for Prejudgment Remedy ("PJR Application") [Doc. No. 2] and Motion for Prejudgment Disclosure of Assets [Doc. No. 3]. On April 10, 2014, the Court entered an Order and Hearing on Notice on the PJR Application (the "Hearing Order") which stated that the papers were to be served upon Chen or her counsel personally by a "proper officer" on or before April 22, 2014. *See* Hearing Order Doc. No. 4.

3. On the same date, April 10, 2014, the Clerk issued a Notice of Hearing ("Hearing Notice") with respect to the Asset Disclosure Motion also scheduling a hearing on that matter for April 29, 2014.

4. The Certificates of Service dated April 10, 2014 and filed by the Trustee [Doc. No. 8 and 9] evidence that the Trustee purported to effectuate service via first class mail, notwithstanding that the papers were ordered to be served personally by a "proper officer".

5. As is set forth above, on April 14, 2014, as Cuevas was still trying to reverse the restraint that was lifted by Novartis, my office, at Novartis' request, asked Judge Barone to "So Order" his March transcript. (See Exhibit **"G"**).

6. Whatever transfers Chen was making to get money out of her accounts was because Cuevas was relentless in his attempts to reverse the restraint which was lifted by Court Order at the end of March – not to defy an Order of this Honorable Court.

7. As Chen testified previously, she did not receive the papers in this action that were purportedly sent to her via first class mail. She only received notice of this case the week of May 14, 2014, at which time the papers were sent to her, through the BNC noticing service, the executed PJR Orders. *See* Affidavit of Xin Chen dated May 30, 2014, Doc. No. 24. Upon receipt of those orders, Chen immediately began to search for legal counsel. *See* Doc. No. 24, ¶6.

8. On or about May 15, 2014, Chen received a package via Certified Mail from Connecticut State Marshall Scott Kramer containing just a copy of the Writ, Summons and Direction For Garnishment which was apparently what was served on TD Ameritrade located at 20 South Main Street, Suite A32, West Hartford, Connecticut 06107, as garnishee. *See* Doc. No. 24, ¶7.

9. That May 15th receipt of the package from the Connecticut State Marshall was the first notice that Chen received that a PJR Application had been filed by the Trustee in this action.

10. As soon as Chen became aware that the PJR Application was filed, she sought counsel, and ultimately retained Pullman & Comley, LLC, on or about May 28, 2014. *See* Doc. No. 24, ¶

11. As is set forth above, during this time, Cuevas's harassment of Chen continued in the Westchester County Supreme Court. That case continued for more than two years after the transfer and the litigation in the Westchester case was ultimately stayed pending the outcome of this case.

12. Once the restraint was lifted in March, 2014, as Chen will testify, she was worried that Cuevas would continue his efforts to freeze her bank accounts (which he did), so she transferred $1,350,000.00 to China. Chen will further testify that the money was transferred, in part, to help her parents pay for medical treatments as her mother was suffering from cancer. At the time of the transfers of these funds, Chen had no knowledge that any action had been filed in this Court against her.

13. In fact, the evidence demonstrates that once Chen appeared in this case, and was bound by the Stipulation entered into and so-ordered by the Court on June 10, 2014, she complied with the Court's orders and has done so for the past three years. There is no evidence of any immediate threat to the Trustee that Chen will transfer or dissipate any assets, in violation of any Court Order, pending the outcome of this proceeding.

14. On June 10, 2014, the Court entered a Stipulated Order whereby the order granting the PJR Motion was vacated [Doc. No. 30], as was the order granting the Motion for Prejudgment Disclosure of Property and Assets (the "Stipulated Order"). The Clerk's Entry of Default was set aside and vacated. *See* Doc. No. 30. Chen stipulated that none of her assets would be transferred to a third-party or a foreign country or encumbered. *See* Doc. No. 30, ¶4.

15. Chen further agreed that she would be allowed to spend up to $12,000.00 monthly for her reasonable, necessary and ordinary expenses for herself, her children and her household. *See* Doc. No. 30, ¶5.

16. The monthly cap did not apply to the following expenditures: a) emergency expenses associated with a health emergency for Defendant, her children or her parents, or travel associated with same, 2) any emergency repairs for house, including but not limited to, expenses as a result of fire damage, basement floods, roof, or heating and air conditioning systems or replacement or repair of a broken water heater; 3) attorneys' fees for the instant litigation or any other litigation Defendant is or becomes involved with; and 4) tuition and room and board due to any institution for Defendant's children. *See* Doc. No. 30, ¶7.

17. The Trustee agreed that he would not seek to reapply to the Court for any prejudgment remedy against Chen during the pendency of this adversary proceeding, so long as Chen was in compliance with the Order. *See* Doc. No. 30, ¶9.

18. In or around October, 2016, Chen provided the Trustee with an Affidavit of Compliance. Therein, she stated that she was in compliance with the Stipulated Order, and she was. Chen provided copies of bank statements going back to the month in which she appeared in this action, which demonstrate that she has strictly complied with the Stipulated Order. A spreadsheet prepared thereafter by Chen explains each expenditure made by her, and shows that her salary was also deposited in the account where the funds at issue in this case were maintained.

19. The documents demonstrate that, since she was ordered by this Court to comply with the terms of the Stipulated Order, Chen has not spent in excess of $12,000.00 per month of the funds at issue in this case (in fact, the money in total that she has spent each month has been far less than $12,000.00 per month). There is no evidence that any funds have been transferred, as was ordered by this Court, since the date that the Stipulated Order was entered.

20. The money that was transferred to China was transferred prior to the entry of the Stipulated Order. The last transfer that was made was on or about May 12, 2014 – three days BEFORE she was properly served in this instant proceeding and during the time Cuevas was continuing his efforts to restrain Chen's bank accounts in New York – which he had already done. As Chen will testify, at the time that the transfers were made, she had no knowledge that this case had been filed against her she was looking to protect her money from Cuevas.

21. In addition, the Trustee argues that the language contained within a previous Affidavit that Chen submitted is further evidence that she has been dishonest. In her Affidavit, it stated that she has not spent more than $250,000.00 "since the inception" of this litigation. As we will explain during the hearing, this was a mistake on our part – the Affidavit should have stated that she has not expended more than $250,000.00 since she appeared in this action.

22. Ultimately, the evidence will demonstrate that Chen did not intend to hinder, delay or frustrate any judgment that may be entered against her in this case.

## ARGUMENT

### POINT I

**AN INJUNCTION IS NOT WARRANTED AS PLAINTIFF SEEKS MONEY DAMAGES AND THE TRANSFERS COMPLAINED OF OCCURRED THREE YEARS AGO**

23. In the instant motion for injunctive relief, Plaintiff seeks the following relief:

   a) Authorizing the Trustee to record the Stipulated Order (as defined below) on the appropriate land records in New Jersey to provide notice to all third parties that the Defendant is restrained from transferring or encumbering her home at 18 Parkview Road, Randolph, New Jersey;

   b) Requiring Defendant to deposit with the Clerk of this Court within two business days all of her cash and other liquid assets above the $250,000 Cap, as that term is defined in this First Modified Order (defined below), which may be released to Defendant upon her compliance with paragraph (3);

    c) Requiring Defendant to deposit the sum of $1,350,000 with the Clerk of this Court within five business days;

    d) Ordering that all funds deposited with the Clerk shall be held to be applied to any judgment obtained in this action by the Trustee pursuant to further order of this Court; and

    e) Ordering that Defendant's violations of this Order may subject her to sanctions, including monetary sanctions as well as the entry of a default judgment against her.

24. First and foremost, the Plaintiff provides no authority for the recording of the Stipulated Order on the appropriate records in New Jersey. The Stipulated Order already provides that Chen is restrained from transferring or encumbering any of her assets and there is no evidence that she has done anything in violation of that order since it was entered on June 10, 2014. Thus, there is already a restraint in place via the Stipulated Order and there is no basis to record same on the appropriate records in New Jersey.

25. In addition to there already being a restraint in place whereby Chen cannot transfer or encumber any of her assets, as set forth herein, a determination requiring Chen to deposit $1,350,000.00 to secure any judgment that the Trustee might obtain essentially requires the Court to determine the ultimate issue in the case, which is Chen's intent, without giving her the opportunity to present her defenses at trial. Such a result is not warranted as Chen should have the opportunity to present her case before the Court makes any determination(s) on these issues.

26. As a general rule, a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages. *Capital Distribution Services, Ltd. v. Ducor Exp. Airlines, Inc.,* 440 F. Supp.2d 195 (E. D. N.Y. 2006); *Feit v. Drexler, Inc.,* 760 F.2d 406 (2d Cir. 1985). Nevertheless, courts have held that a preliminary injunction is appropriate

to prevent a defendant from taking actions to frustrate a judgment. *Capital Distribution Services, Ltd.,* 440 F. Supp.2d at 210.

27. Such a demonstration of intent to frustrate a judgment will satisfy the requirement of a showing of irreparable harm. *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995). Here, the Trustee points to the transfers that were made almost three years ago, before Chen was properly served in this case and had knowledge of its filing, in support of the argument that Chen has intended to frustrate the collection of any judgment in this matter. The transfers alone, given the circumstances surrounding them, do not support a finding that Chen transferred the money solely to avoid the collection of a judgment in this case.

28. In *Signal Capital Corp.,* the Court denied a motion for an injunction where the plaintiff sought to rely upon past fraudulent transfers that allegedly frustrated the plaintiff's ability to collect upon a judgment that it obtained in that case against the same defendant. The Court stated that the plaintiff could point to no actual or pending transfers that supported an actual intent to frustrate collection of a judgment. Here, there are certainly no pending transfers that the Trustee can point to and there have not been any in almost three years. Given the fact that Chen was unaware of the filing of this case against her at the time of the transfers, the restraint (and release) of her accounts, and continued harassment by Cuevas, and the necessity for Chen to help her mother with her medical treatment, the evidence is not sufficient to establish that Chen transferred funds to China to avoid any judgment that may be obtained by the Trustee in this case. Chen has not encumbered, or transferred, any of her assets since she became aware that this case had been filed against her.

29. In support of its application for an injunction, the Trustee is required to demonstrate that it will suffer irreparable harm if an injunction is not issued. *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995). Contrary to the one case cited by the Trustee in support of

his argument that a lesser standard should be applied here, a lesser standard than that of irreparable harm is not appropriate here. In support of this position, the Trustee cites *Hamma v. Gradco Systems, Inc.,* 1992 WL 336740 (D. Conn. Nov. 4, 1992). The case in *Hamma,* however, involved an ancillary order, not a request for an injunction. Thus, a lesser standard of probable cause was required, not the irreparable harm standard that is applied when a party is seeking an injunction. We could not find any other case law where the court determined that a party asking the court to issue an injunction was not required to show irreparable harm and any lesser standard should not be used here.

30. Towards this end, none of the cases cited by the Trustee involved a defendant that transferred money prior to being aware that a case had been filed against them. Here, the Certificates of Service filed by the Trustee evidence the fact that Chen was not served properly. She was purportedly served via regular mail.

31. Immediately upon learning that the case had been filed, through proper service by the Connecticut Chen sought, and retained, legal counsel, who quickly filed a motion to vacate the default judgment and PJR orders, which were granted.

32. At the time that this case was filed, Chen's accounts had already been improperly restrained (and shortly thereafter released by Court Order) by Cuevas, and she therefore transferred money to China to avoid Cuevas' continued harassment.

33. As set forth herein, the Trustee asks the Court to determine on this motion that Chen intended to hinder, delay and frustrate any judgment that the Trustee may obtain in this case. Chen's intent is one of the ultimate issues that must be determined at trial. Federal Rule of Civil Procedure 65, which is incorporated in the Federal Rules of Bankruptcy Procedure through Rule 7065, states as follows:

2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial. Fed. R. Civ. P. 65

34. As the trial in this case is scheduled for April 18, 2017, consolidation of the issues relevant to the injunction, with the trial on the merits, is appropriate.

35. In addition, the purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits. *Diversified Mortg. Inv'rs v. U.S. Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976). It is not an adjudication on the merits and it should not grant relief properly awarded only in a final judgment. *Id.* Here, the status quo is such that Chen is already prohibited from transferring or encumbering any of her assets. The funds that were transferred to China were transferred prior to the service of any Order and have not been in Chen's possession, custody or control since then. Chen has provided a detailed accounting of every expense and deposit into her bank accounts since receiving proper notice of this action. The bank account statements and Chen's accounting show that: (1) she has been in compliance with all Court orders; and (2) there is no threat that she is going to transfer any assets. Thus, there is no need for an injunction.

36. The relief sought by the Trustee, given the determinations that must be made in order for the Court to grant that relief, is not properly awarded if it is before a trial on the merits. Thus, if the Court is going to consider the instant application by the Trustee, the hearing should be consolidated with the trial in this case.

## **CONCLUSION**

Based upon the foregoing, Defendant, Xin Chen, respectfully requests that the Court deny the Plaintiff's motion for injunctive relief in its entirety, or, in the alternative, that the hearing on the motion for injunctive relief be consolidated with the trial in this case pursuant to Fed. R. Civ. P. 65 and Fed. R. Bankr. P. 7065, and that the Court grant such other and further relief as it deems just and proper.

Dated: March 14, 2017

                                          Respectfully submitted,

                                          CONDON & ASSOCIATES, PLLC

                                          By: /s Brian K. Condon
                                                Brian K. Condon
                                                Laura M. Catina
                                          55 Old Turnpike Road, Suite 502
                                          Nanuet, New York 10954
                                          (845) 627-8500 (Telephone)
                                          (845) 627-8507 (Facsimile)
                                          Brian@CondonLawOffices.com

                                          *Attorneys for Defendant Xin Chen*