# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | : | Chapter 7 |
| JIE (GEORGE) XIAO, | : | Case No. 13-51186-JJT |
| Debtor. | : | |
| | : | Adv. Pro. No. 14-05019-JJT |
| RONALD I. CHORCHES, TRUSTEE | : | |
| Plaintiff, | : | |
| v. | : | |
| XIN CHEN, | : | |
| Defendant. | : | |

## DEFENDANT XIN CHEN'S EMERGENCY APPLICATION
## FOR RECUSAL OF HON. JAMES J. TANCRIDI

Pursuant to Fed. R. Bankr. P. 5004(a), Section 455 of Title 28, Defendant Xin Chen ("Defendant" or "Chen") hereby moves this Court for the recusal of Hon. James J. Tancridi from presiding over this adversary proceeding. In support of this motion, Defendant represents as follows:

The application for recusal by the Defendant is based upon the Court's bias and/or prejudice concerning the Defendant. By order dated March 21, 2017 [Doc. No. 142], the Court enjoined Defendant from international travel and directed Defendant to turn her passport over to her counsel (the "Order"). The foregoing decision was made without due process to Defendant and without hearing any testimony from her during the hearing on March 20, 2017. Defendant's counsel was not given the opportunity to be heard prior to the issuance of the Order.

Defendant is a United States citizen and a single mother of two children who resides in New Jersey. The ex-husband Debtor works in China and has for several years. Throughout this litigation, there has never been any evidence that the Defendant is a flight risk or has given this

Court any reason to believe that she will not appear in Court nor has she missed any Court appearance or has been in violation of any Order from this Court. She owns a home in New Jersey. Her children go to school in New Jersey (one in college and one in high school). There is no one else here to care for her daughter who is in high school. Other than the initial motions filed by Plaintiff in April, 2014, for which Defendant did not receive notice, Defendant has never failed to appear for anything in this case. She appeared for her deposition. She has appeared in Court when necessary, including the hearing on March 20, 2017. She will be present to testify at the continuation of the hearing on March 28, 2017. When the Court asked during the hearing on March 20, 2014 if Defendant had any plans to travel outside of the country, her response was "No."

There was not a shred of evidence presented during the hearing that would warrant restraining the Defendant from international travel, especially given the fact that her mother is sick with cancer in China. However, the Court did not know about her mother's cancer because the Defendant did not get a chance to testify in this hearing. Furthermore, the Court asked Defendant's counsel, Mr. Condon, to proffer as to what the Defendant was going to testify to. The Defendant is not a duplicative witness who has been subpoenaed. The Court is not looking to determine if certain witnesses are necessary, she is the subject of the instant hearing. We are unclear as to why the Court was looking for a proffer of the Defendant's testimony before she testified. Counsel's impression was that the Court was insinuating that "based on what we've heard already, what is the point of her testimony".

Furthermore, during the course of the hearing – prior to hearing the Defendant's testimony, the Court opined that, although he had not made up his mind, he referred to the BNC notices and attorney certifications as an indication that he was not convinced that the Defendant did not receive notice of the instant Adversary Proceeding.

This is not a criminal proceeding. It is not a situation where there is concern that a parent will flee the country with a child. Notwithstanding what appears to be the Court's bias and clear opinion of Defendant and this case, prior to trial and without hearing her testimony prior to making this decision, this is a civil action involving a single mother with no evidence that she is a flight risk. Towards this end, the decision was made *sua sponte* and was not requested by the Plaintiff.

Although no one has raised an issue concerning whether Defendant is a United States citizen, the Court questioned Attorney Carlos Cuevas during the hearing regarding whether the Defendant is a citizen. We have been advised that the Court has asked this question of Attorney Luis Medina previously.

In addition, prior to the hearing on March 20, 2017, the Court asked counsel for the Defendant, Ms. Laura Catina, to remind her of the consequences of not telling the truth.

Further, the Court based its instant Order, in part, on the finding that Judge Schiff had previously found "probable cause" in this case. While no specifics were given by the Court, we assume that the Court was referring to the Plaintiff's 2014 application for prejudgment remedy. If that is the probable cause the Court was referring to, that Order dated May 5, 2014, granting Plaintiff's application was made ON DEFAULT and was, subsequently vacated by a Stipulated Order dated June 10, 2014. The Stipulated Order of June 10th addressed all of the same issues that Plaintiff was requesting in its unopposed Prejudgment application. No determination has ever been made on the merits of this case and this Court has never issued any Order based on the wrongdoing on the part of the Defendant.

Notably, the Order is based, in part, on the fact that the Defendant's ex-husband conducts business in and "frequents" China. First of all, the Debtor does not "frequent" China, from what the Defendant has stated, he works there. Secondly, the Court would have been able to question

the Defendant about the frequency of the Debtor's visits had the Court waited to hear from the Defendant prior to issuing his Order which prohibits the freedom of personal travel of the Defendant, an American citizen. The Court's statement, both on the record and in its Order, clearly implies that the Defendant still maintains a close relationship with her ex-husband and, insinuated, that she may return there because he is there. The ultimate issue in this Adversary Proceeding is whether the divorce was a "sham", according to Carlos Cuevas, to avoid debts owed by the Debtor, the Defendant's ex-husband.

It is apparent that, given the basis for the Court's restraint on Defendant's travel, the Court already has made up its mind on the ultimate issue in this case, even though Defendant has not even testified on the instant issue of injunctive relief or before the case has been tried. Defendant's constitutional rights have been violated and based on the foregoing, we are requesting that Hon. James Tancridi recuse himself from presiding over this instant hearing as well as the trial which is scheduled for April 18, 2017.

**I.        Factual Background**

1.    On April 8, 2014 Plaintiff, Ronald I. Chorches, as Trustee of the Estate of Jie Xiao, filed the instant adversary proceeding against the Defendant alleging that transfers made to the Debtor pursuant to a Judgment of Divorce and Property Settlement Agreement were fraudulent conveyances. Doc. No. 1.

2.    On the same date, Plaintiff also filed a Motion for Prejudgment Remedy and a Motion for Prejudgment Disclosure of Property and Assets. Doc. Nos. 2 and 3.

3.    The Complaint and motion papers were allegedly served upon Defendant on April 10, 2014; however, the Complaint was not served properly and, as Chen will testify at the upcoming hearing on March 28, 2014, she did not receive it at that time. Doc. Nos. 8 and 9.

4

4. The Court scheduled a hearing for April 29, 2014 regarding Plaintiff's motions.

5. On April 29, 2014, Plaintiff appeared. As Defendant was unaware of the filing of the litigation, and of the hearing, she did not appear.

6. On May 5, 2014, the Court signed the Order granting Plaintiff's application for a Prejudgment Remedy and for the Prejudgment Disclosure of Property and Assets. The motions were granted on default.

7. On or about May 15, 2014, Chen received a package via Certified Mail from Connecticut State Marshall Scott Kramer containing just a copy of the Writ, Summons and Direction For Garnishment which was apparently what was served on TD Ameritrade located at 20 South Main Street, Suite A32, West Hartford, Connecticut 06107, as garnishee.

8. As Chen will testify, this was the first notice that she had of this litigation.

9. Upon receipt of the papers, she did not flee the country. Rather, she began searching for, and retained, legal counsel to represent her in this case.

10. Defendant retained Pullman & Comley LLP to represent her and Notices of Appearance were filed on May 30, 2014 by Jessica Grossarth, Esq. and Elizabeth Austin, Esq. On the same day, Attorney Grossarth filed a Motion to Set Aside the Default and a Motion to Vacate the Order granting a Prejudgment Remedy and Disclosure of Assets.

11. By Stipulated Order dated June 10, 2014, the prior orders entered by the Court, including the order dated May 5, 2014 granting the Plaintiff's application for a Prejudgment Remedy, were vacated and therefore, no longer in effect.

12. Defendant has never failed to appear for any court appearance (except the initial appearance which she had no knowledge of) and has appeared for depositions regarding the transactions at issue in this case. She was deposed in this case. She was deposed in the case

pending against her in the Supreme Court of the State of New York, Westchester County, by Attorney Cuevas. Defendant appeared for the mediation that was conducted in this matter in September, 2016.

13. Since April, 2014, Defendant has traveled to China three times to see her parents and each time she has returned to the United States. As Defendant will testify, her mother is suffering from cancer in China. If Defendant receives a call on a Friday evening that she has to travel to China to be with her sick mother, she is restrained from doing so because of the fraudulent conveyance claim in this case? It is respectfully submitted that this is unheard of.

14. Quite simply, there is no evidence that she presents a flight risk and the restraint of her international travel, as well as the taking of her passport, is egregious.

**II.     Legal Argument**

    **A. The Order Clearly Demonstrates Bias and Prejudice Against Defendant**

15. Under Bankruptcy Rule 5004(a), Section 455 of Title 28 governs recusal of a bankruptcy judge. The judge must be disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises, or, if appropriate, disqualified from presiding over the case. Here, Judge Tancridi must be disqualified from presiding over the case in its entirety.

16. There are several subparts to Section 455. Under Section 455(a), a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned. Here, this is certainly the case.

17. Section 455(b) is also applicable here. This section states that a judge must disqualify himself in the following additional circumstances: (1) Where he has a personal bias or

prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.  Here, the evidence demonstrates a bias and/or prejudice against the Defendant.

18. The standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned. *In re Haas,* 292 B.R. 167 at 177 (Bankr. S.D. Ohio 2003).

19. There are two sets of circumstances that present grounds for one to recuse oneself: the "Extrajudicial Source Doctrine" and the "Pervasive-Bias Exception." *In re Lupo,* Case No. 09-21945, Doc. 1182, at *4.  The Pervasive Bias Doctrine is available "when a judge whose information is limited to that revealed during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment appears impossible." *In re Lupo,* at 4, citing *In re Haas*, 292 B.R. 167 at 177.

20. It is well-settled that "[j]udicial rulings alone," the Court observed, "almost never constitute valid basis for a bias or partiality motion" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required." *In re Int'l Bus. Machines Corp.*, 45 F.3d 641, 644 (2d Cir. 1995).  However, "these very expressions of a strict standard allow for the possibility that 'in the rarest circumstances judicial rulings alone can warrant recusal, and can surely do so when accompanied by extrajudicial actions." *Id. citing Litesky v. United States,* 510 U.S. 540 (1994).  Thus, although it is rare, it can be warranted.

21. Here, recusal is warranted as it appears that a fair judgment is impossible.  The Court has restrained Defendant from international travel to "prevent future irreparable harm to the Chapter 7 Estate for which there is no likely or effective legal remedy, given the costs, practical impediments and difficulties of legal proceedings in China should the defendant remove herself or

7

other assets beyond the jurisdiction of this Court. Furthermore, pursuant to the final paragraph of the Trustee's prayer for relief, for the reasons already stated, justice so requires the imposition of the injunctive relief set forth herein." Doc. No. 142. Clearly, the Court has already made its determination in this matter if it has imposed injunctive relief without even giving Defendant the opportunity to be heard. The decision to impose the restraint upon the Defendant was made based upon Defendant's origin of China, and the fact that her ex-husband does business and "frequents" there.

22. As set forth herein, The Court's statement, both on the record and in its Order, clearly implies that the Defendant still maintains a close relationship with her ex-husband and, insinuated, that she may return there because he is there. The ultimate issue in this Adversary Proceeding is whether the divorce was a "sham" and it is apparent that, given the basis for the Court's restraint on Defendant's travel, the Court already has made up its mind on the ultimate issue in this case. Thus, a fair trial for the Defendant is impossible.

### III. Conclusion

For the foregoing reasons, Defendant, Xin Chen, seeks an order from Hon. James J. Tancridi recusing himself from presiding over this matter in its entirety.

Respectfully submitted,

CONDON & ASSOCIATES, PLLC

By: s/ Brian K. Condon
    Brian K. Condon
    Laura M. Catina
55 Old Turnpike Road, Suite 502
Nanuet, New York 10954
(845) 627-8500 (Telephone)
(845) 627-8507 (Facsimile)
Brian@CondonLawOffices.com

8